**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                              Case No.: 3:17-CR-193-J-39JRK

**DEDRIX DAKA**
_____

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant, **DEDRIX DAKA,** by and through his undersigned counsel, files this memorandum of law for the Court's consideration at the sentencing on February 26, 2018, and states:

**MEMORANDUM OF LAW**

**I.**     **MR. DAKA'S HISTORY AND CHARACTERISTICS**

If asked to name a person most unlikely to ever stand before a federal court judge for a fraud conviction, it appears that Dedrix Wilson Daka would have been a leading vote getter. There have been numerous letters of support provided to the undersigned counsel. These redacted letters are attached as Exhibit A. The letters are from family, friends, and community members, and all speak of Mr. Daka's good character and the shock of finding out about these allegations.

Mr. Daka's life began in a small village in Zambia in the late 1950s. At the time of Mr. Daka's birth, Zambia was part of the British Empire. In 1964, Zambia became independent of the United Kingdom.

In this time of turmoil, Mr. Daka, even as a young boy, recognized that education would be his path to a better life. He was one of the most outstanding students in his village. By the fifth grade, he had passed a vigorous exam and attended boarding school. Although this education would provide him with great opportunities, it also came at great cost: he was only able to see his family on school breaks by taking a four-hour bus trip back to his village. His parents worked as farmers, raising corn, rice and sunflowers. His father was also a local politician. His siblings stayed behind with his parents, attending the local schools. Thus, at an early age, Mr. Daka had to become self-sufficient.

After high school, Mr. Daka served a short term of compulsory military service in Zambia. After completing his military service was a platoon commander / sergeant, he had the opportunity to come to school at Edward Waters College. This education was financed by grants and scholarships. He graduated from EWC with his bachelor's degree and attended University of North Florida and University of Florida in the master's degree program.

One reason that all of his friends and family were shocked about this case is his success in raising his children to be strong, educated professionals. When Mr. Daka talks about his children, his pride is unmistakable. His adult children are well on their way to

producttive lives: a computer programmer for the MD Anderson Cancer Center, a neurosurgeon, and a traveling registered nurse. His remaining daughter, a senior at high school, plans to attend college and medical school. During meetings with the undersigned, one of the biggest struggles for Mr. Daka was his fear of disappointing and shaming his children. He wants to be able to continue to be an example to his children – his son's letter to the court reflect that the children do, in fact, still love and admire their father in spite of his error in this case.

His biggest fear is that he will not be able to be a part of his daughter's remaining high school time and will not be able to be a part of her college life. He was able to help his other children attend school and wants to do the same for her.

There are many reasons to believe that Mr. Daka will never again be standing in front of a judge in a criminal case. When looking at all of the measured recidivism factors, they all point to the inescapable conclusion that he is a low risk of reoffending.

Mr. Daka represents a low risk of recidivism due to his prior full-time employment at the time of his arrest and lack of drug use. Those offenders with steady employment in the year prior to their instant offense are less likely to recidivate than those who are unemployed. His family responsibilities give him a great incentive to avoid future troubles. Offenders who are married are less likely to recidivate than those who are divorced or single. Mr. Daka is married and resides with his wife on property they own.

3

These factors has been identified by the research of the sentencing commission as characteristics which are present in low-recidivism cases. *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines,* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004).

Recidivism rates also decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender is to recidivate. Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent. *Measuring Recidivism,* page 12 of 38. Mr. Daka is 59 years old, a mature man with work and family responsibilities with the ability to overcome the bad decision he made.

## II.     THE NATURE & CIRCUMSTANCES OF THE OFFENSE

Although the Indictment contains serious accusations, this crime does not involve crimes of violence, drug offenses or the typical kind of fraudulent accusations we may see in federal court.

Although the government disagrees with Mr. Daka's intentions, he was approved to provide services for court agencies and had employees on staff to provide counseling. Mr. Daka spoke movingly about his desire to help others and how he and his staff would give holiday packages to patients.

It is clear that Mr. Daka is heartsick over this case and is the kind of person who will never be back in any kind of legal trouble.

### III. NEED FOR SENTENCE TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE DETERRENCE, TO PROTECT THE PUBLIC

Here, there has been a violation of the law. Accordingly, the crime should be punished in some fashion. The federal conviction admitted by Mr. Daka carries great weight. The experience of the present prosecution has had a terrible emotional impact on Mr. Daka.

Regardless of the sentence, Mr. Daka will now always suffer the brand of a federal criminal conviction - no small punishment for any defendant. Because of this conviction, Mr. Daka suffers the resulting loss of civil liberties. Mr. Daka has lost the right to own or possess a firearm. Mr. Daka has lost the right to vote and to serve on juries. Mr. Daka can be limited in obtaining certain occupational licenses. Mr. Daka can be limited from participating in some federal entitlement programs.

And Mr. Daka will be on supervision as part of any federal sentence. Such supervision will entail great responsibility from him to the court and represents a substantial restriction on his liberty. .

### V. GUIDELINES ISSUES (ENHANCEMENTS AND TRADITIONAL DEPARTURES), PERTINENT POLICY STATEMENTS, AND KINDS OF SENTENCES AVAILABLE

Incarceration is not the answer in every criminal case. The sentencing court is not bound by the guideline chart and its division into zones to determine whether a sentence of imprisonment is required or reasonable.  Under 18 U.S.C. § 3582, the court is directed that "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, the length of the term" it shall "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction or rehabilitation."

In the objections to the PSR, Mr. Daka notes that, pursuant to the plea agreement, the parties agreed that Mr. Daka submitted a total of $232,252 in claims using physician M.F.'s billing number after she left South Rehab.  Further, the parties agree that DAKA and South Rehab received a total of $147,883.65 in inappropriate reimbursement for these improper claims.

Based on the loss of $232,252, there should be the specific offense characteristic should be only 10 levels.  This would result in an adjusted offense level of 16 and a total offense level of 13.  At total offense level 13, criminal history category I, the advisory guidelines range becomes 12 to 18 months.  However, since the sentence falls in Zone C, the Court can consider other sentencing options.

## VI.    NEED TO PROVIDE RESTITUTION

Mr. Daka could best support his family and meet any court ordered obligations by being on supervision and working.

Dated: February 21, 2018.

> DONNA LEE ELM
> FEDERAL DEFENDER
>
> s/ *Lisa Call*
> _____
> Lisa Call, Assistant Federal Defender
> Florida Bar No. 0896144
> 200 West Forsyth Street
> Jacksonville, Florida 32202
> Telephone: 904-232-3039
> Fax: 904-232-1937
> Lisa_call@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served by electronic filing to Jay Taylor, U.S. Attorney's Office, 300 North Hogan Street, Suite 700, Jacksonville, Florida 32202, on February 21, 2018.

> *Lisa Call*
> _____
> Lisa Call